**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| INAYAT M. DAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 11-CV-213-JED-FHM |
| v. ) | |
| ) | |
| JOSE OLIVARES, Field Office Director of ) | |
| Bureau of Citizenship and Immigration ) | |
| Services; and BUREAU OF CITIZENSHIP ) | |
| AND IMMMIGRATION SERVICES, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

The Court has for its consideration the Motion for Summary Judgment filed by the defendants, Jose Olivares and the Bureau of Citizenship and Immigration Services. (Doc. 29). Plaintiff, Inayat M. Dar, filed a Response (Doc. 35), and defendants filed a Reply (Doc. 40) as well as a Notice of Supplemental Legal Authority (Doc. 41). The Court has reviewed these submissions, the Administrative Record ("A.R.") (Doc. 24), and the applicable law. For the reasons set forth herein, the Court determines that the Motion should be granted.[1]

**I.    Background**

The facts are largely undisputed. Plaintiff is a native and citizen of Pakistan. In 1984, after pleading nolo contendere, plaintiff was convicted of indecent exposure and sentenced to two years in prison. The sentence was suspended upon conditions. (A.R. 87-88). More relevant to this proceeding, on September 24, 1993, he was charged in Tulsa County District Court with attempted rape, in violation of Okla. Stat. tit. 21, § 1115 (Count 1), and sexual battery in

---

[1]    The facts set forth herein are the Court's findings of fact, and the legal determinations herein are the Court's conclusions of law. *See* 8 U.S.C. § 1421(c) (review of denial of naturalization application includes the district court making its own findings and conclusions).

violation of Okla. Stat. tit. 21, § 1123(B) (Count 2). (A.R. 139). On July 15, 1994, he entered a plea of nolo contendere and was convicted and sentenced to 10 years on the convictions, to run concurrently. The sentences were suspended. (A.R. 85-86, 139, 144, 510, 814).[2]

Plaintiff adjusted to lawful permanent resident status on January 13, 1994, six months before his 1994 attempted rape and sexual battery convictions. (A.R. 314). On January 2, 2004, Immigration and Customs Enforcement placed plaintiff in custody and initiated removal proceedings because of his 1994 convictions. On May 20, 2004, an immigration judge granted plaintiff relief from removal under former Immigration and Nationality Act § 212(c), which permitted plaintiff to remain in the United States as a lawful permanent resident.[3]

Plaintiff applied for naturalization by submission of a Form N-400 Application for Naturalization dated May 4, 2009. (A.R. 73, 75). On November 5, 2010, the United States

---

[2]   The bottom of the copy of the Judgment and Sentence on Count 2 (sexual battery) is cut off in the Administrative Record, such that the defendant asserts it "is unclear regarding the sentence imposed" on that conviction. (*See* A.R. 85; Doc. 29 at 3, fn.1). After reviewing the entire Administrative Record, the Court finds that plaintiff was sentenced to 10 years on Counts 1 (attempted rape) and 2 (sexual battery), to run concurrently. For example, the July 15, 1994 minute entry on the docket for the sentencing on the 1994 convictions reflects a sentence of 10 years on Counts 1 and 2 "to run concurrent and suspended" (A.R. 144), an affidavit of plaintiff's counsel from that case confirms the substance of the judgment and sentence (*see* A.R. 814), and plaintiff's counsel's submission for relief from deportation further confirmed convictions on both the attempted rape and sexual battery counts (A.R. 474).

[3]   The statute authorizing relief from removal / deportation of resident aliens (formerly § 212(c) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1182(c) (1994)) was repealed by amendments made by the Antiterrorism and Effective Death Penalty Act of 1996 and repeal and replacement of § 212(c) in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Because Congress did not clearly express an intention for retroactive application of that repeal, the Supreme Court has held that aliens convicted prior to the enactment of the repeal are not prohibited from seeking relief from deportation / removal under the former § 212(c). *See I.N.S. v. St. Cyr*, 533 U.S. 289, 326 (2001) ("§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect.") As plaintiff's convictions were in 1994, he was not disqualified from seeking relief from deportation under the former § 212(c).

Citizenship and Immigration Services ("USCIS") denied the application. (A.R. 61-62). As the basis for denial, the USCIS found plaintiff's convictions to be aggravated felonies, such that plaintiff did not meet the requirement for good moral character and, consequently, was ineligible for naturalization. (A.R. 62). On December 6, 2010, plaintiff appealed the USCIS's denial of the application for naturalization. (A.R. 25). USCIS denied the appeal, based upon its determination that plaintiff "was convicted of an aggravated felony, and . . . is therefore permanently barred from naturalizing because of this conviction." (A.R. 24).

Pursuant to 8 U.S.C. § 1421(c), plaintiff initiated this action, requesting de novo review of the denial of his application for naturalization. Defendants have moved for summary judgment, citing the applicable statutes and the undisputed evidence.

## II.    Standards Governing Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "By its terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "[S]ummary judgment will not lie if the dispute about a material fact is not 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In considering a summary judgment motion, the courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is

3

taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255.

The summary judgment procedure is "not . . . a disfavored procedural shortcut, but rather [is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327. When the moving party has carried its burden under Rule 56, its "opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The Federal Rules of Civil Procedure, including Rule 56, generally apply to proceedings for admission to citizenship. *See* Fed. R. Civ. P. 81(a)(3). Federal courts have concluded that the summary judgment process under Rule 56 is applicable to proceedings under 8 U.S.C. § 1421(c) for de novo district court review of denial of an application for naturalization. *See, e.g., Kariuki v. Tarango*, 709 F.3d 495, 502-03 (5th Cir. 2013); *Chan v. Gantner*, 464 F.3d 289, 295 (2d Cir. 2006); *Abulkhair v. Bush*, 413 F. App'x 502, n.4 (3d Cir. 2011); *Cernuda v. Neufeld*, 307 F. App'x 427, n.2 (11th Cir. 2009).[4]

---

[4]  Plaintiff does not challenge the Court's authority to rule on the summary judgment motion. Indeed, in his Response, plaintiff cites Rule 56 summary judgment standards. (Doc. 35 at 8-9).

**III.     Discussion**

        *A.     The Naturalization Framework Requiring Good Moral Character*

The burden is on the person seeking naturalization "to show his eligibility for citizenship in every respect." *Berenyi v. District Director, Immigration & Naturalization Serv.*, 385 U.S. 630, 637 (1967). Because citizenship status, "once granted, cannot lightly be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship." *Id.* Any doubts about citizenship "should be resolved in favor of the United States and against the claimant." *Id.* (citation omitted). The burden requires the applicant for naturalization to prove, by a preponderance of the evidence, that he meets *all of the requirements for naturalization* and is thus eligible to become a citizen of the United States. *See* 8 C.F.R. § 316.2(b).

In order to qualify for naturalization, a person must meet certain residency requirements and establish that "[he] has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness in the United States." 8 U.S.C. § 1427(a). An alien seeking naturalization shall *not* "be regarded as, or found to be, a person of good moral character [if], during the period for which good moral character is required to be established, [he] is, or was . . . one *who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section)*." 8 U.S.C. § 1101(f)(8) (emphasis added). "Aggravated felony" under § 1101(a)(43) includes "rape," "a crime of violence," or "an attempt . . . to commit an offense described" in that section. 8 U.S.C. § 1101(a)(43)(A), (F), (U).

The good moral character bar of § 1101(f)(8) (quoted above) and amendments to the definition of "aggravated felony" under § 1101(a)(43) are central to this case. Section 1101(f)(8)

was amended, by the Immigration Act of 1990, to add conviction for an "aggravated felony" to the list of circumstances that bar a finding of good moral character. *See* Pub. L. 101-649, § 509(a), 104 Stat. 4978 (1990). At the same time, the definition of "aggravated felony" under § 1101(a)(43) was broadened to include "any crime of violence (as defined under [18 U.S.C. § 16], not including a purely political offense) for which the term of imprisonment . . . is at least 5 years." *Id.*, § 501(a)(3).

"Aggravated felony" was again amended with the enactment of the IIRIRA, effective September 30, 1996. In the IIRIRA, "rape" was added to the list of aggravated felonies under subparagraph § 1101(a)(43)(A). Pub. L. 104-208, Div. C, § 321(a)(1), 110 Stat. 3009 (1996). At the same time, the IIRIRA reduced, from five years to one year, the term of sentence required to make a "crime of violence" an "aggravated felony" under § 1101(a)(43)(F). *Id.*, § 321(a)(3). In the IIRIRA, Congress provided that the current definition of the term "aggravated felony" shall be applied "regardless of whether the conviction was entered before, on, or after the enactment of this paragraph [September 30, 1996]." *Id.*, § 321(b). The current version of the statute continues to require the use of the current aggravated felony definition "regardless of whether the conviction was entered before, on, or after September 30, 1996." 8 U.S.C. § 1101(a)(43).

Because rape was not included in the definition of aggravated felony until September 30, 1996, plaintiff argues that his 1994 conviction for attempted rape was improperly used to deny his application for naturalization. He specifically argues that retroactive application of the aggravated felony definition (as amended in 1996) to his 1994 conviction for attempted rape violates the Ex Post Facto Clause of the United States Constitution. He also argues that the 1994 conviction is "too remote in time" to be considered in denying his application for naturalization. Finally, plaintiff asserts that an immigration judge's 2004 grant of relief from removal under

former Immigration and Nationality Act § 212(c) adjudicated his moral character and barred USCIS from denying his naturalization application based upon an alleged lack of good moral character. Each of plaintiff's assertions is addressed below.

### B.      *Retroactive Application Does Not Violate the Ex Post Facto Clause*

Plaintiff argues that, because "rape" was not added to the list of aggravated felonies until 1996, the Ex Post Facto Clause prohibits USCIS's denial of his application for naturalization, as it imposes "legal consequences to a criminal conviction that occurred [in 1994] before it was enacted." (Doc. 35 at 12). The Court disagrees. It is well-settled that the Ex Post Facto Clause (U.S. Const. art. I, § 9, cl. 3) applies only to laws that impose penalties that are criminal in nature, and courts have consistently held that immigration consequences like removal or deportation, while severe, are not criminal penalties subject to the Ex Post Facto Clause. *See, e.g., Galvan v. Press*, 347 U.S. 522, 531 (1954); *Alvarado-Fonseca v. Holder*, 631 F.3d 385, 391-92 (7th Cir. 2011); *Montenegro v. Ashcroft*, 355 F.3d 1035, 1037 (7th Cir. 2004); *see also Bhalli v. Ashcroft*, 96 F. App'x 588, 592 (10th Cir. 2004) (citing *Galvan*, 347 U.S. at 531) ("it is well established that the Ex Post Facto Clause does not apply to laws and regulations determining an alien's right to remain in the United States.").

Plaintiff argues that *Padilla v. Kentucky*, 559 U.S. 356 (2010) changed that long-standing rule and "expanded the 'criminal' right to effective counsel to the 'civil' issue of immigration consequences," and that, "[b]y doing this, the Supreme Court has indicated that immigration consequences are so important and crucial that they should be protected by rights associated with criminal penalties." (Doc. 35 at 10). Circuit Courts have rejected the argument plaintiff asserts here. For example, in *Morris v. Holder*, 676 F.3d 309 (2d Cir. 2012), the petitioner appealed a ruling by the Board of Immigration Appeals ("BIA") that affirmed an immigration judge's

7

finding that the petitioner was removable. The petitioner argued that retroactive application of the immigration amendments to the definition of "aggravated felony" in his deportation proceedings violated the Ex Post Facto Clause. *Id.* at 316. After recognizing the long line of authority that statutes retroactively setting criteria for deportation do *not* violate the Ex Post Facto Clause, the petitioner in *Morris* argued (as plaintiff does here) that *Padilla* altered the established rule. The Second Circuit rejected the petitioner's argument, reasoning as follows:

> In *Padilla*, the Supreme Court held that [an alien] criminal defendant's counsel has an obligation under the Sixth Amendment to inform that defendant whether his plea carries a risk of deportation. . . . Both this Circuit and, more importantly, the Supreme Court, have long held that deportation and removal are civil proceedings. *Padilla* itself expressly affirms that "removal proceedings are civil in nature," and although "deportation is a particularly severe 'penalty,' . . . it is not, in a strict sense, a criminal sanction." Given this language, **we do not construe *Padilla* as overturning this Circuit's prior precedent that "statutes retroactively setting criteria for deportation do not violate the ex post facto clause."**

*Morris*, 676 F.3d at 316-17 (emphasis added) (citations and internal paren. omitted) (quoting *Padilla*); *see also Chan v. Gantner*, 464 F.3d 289, 293 (2d Cir. 2006) (citations omitted) ("The denial of citizenship is a civil proceeding to which the Ex Post Facto Clause does not apply.").[5]

In a deportation case similar to *Morris*, the Seventh Circuit also held that retroactive application of an amended definition of aggravated felony, which resulted in deportation, did not violate the Ex Post Facto Clause. *Alvarado-Fonseca v. Holder*, 631 F.3d 385, 391-92 (7th Cir.

---

[5] In *Asagwara v. Gonzales*, 205 F. App'x 644 (10th Cir. 2006), an alien sought review of the BIA's dismissal of his appeal from a removal order. The alien argued that retroactive application of IIRIRA's definition of "conviction" violated his due process rights. After quoting IIRIRA's language providing that the definition "shall apply to convictions and sentences entered before, on, or after the date of" IIRIRA's enactment, the court concluded that retroactive application of the definition of "conviction" did *not* violate the alien's due process rights. *Id.* at 647-48. In arriving at that determination, the court noted "Congress's ability to retroactively expand the class of aliens subject to deportation for criminal activity." *Id.* at 647. The court also cited a Second Circuit decision that rejected a due process challenge to the retroactive application of IIRIRA's "aggravated felony" definition. *Id.* at 647-48 (citing *Kuhali v. Reno*, 266 F.3d 93, 111 (2d Cir. 2001)).

8

2011). Like the Second Circuit in *Morris*, the Seventh Circuit concluded that the Supreme Court's decision in *Padilla* did not render retroactive criteria for deportation to be in violation of the Ex Post Facto Clause. *Alvarado-Fonseca*, 631 F.3d at 392.

For the same reasons articulated in *Morris* and *Alvarado-Fonseca,* this Court concludes that retroactive application of the definition of aggravated felony to plaintiff's 1994 convictions does not violate the Ex Post Facto Clause. The Court also notes that the penalty at issue in this civil proceeding regarding the denial of naturalization to citizenship is much less severe than that involved in the deportation proceedings at issue in *Morris* and *Alvarado-Fonseca*. Plaintiff is a permanent resident, and he is being denied a *benefit* of naturalization, rather than being subjected to a *penalty* of deportation. Thus, the result in this case is clearly civil and does not implicate or remotely resemble a criminal penalty to which the Ex Post Facto Clause would apply.

In addition, statutes should be retroactively applied when the statute at issue indicates a clear intent that it is to be applied retroactively. *Chan*, 464 F.3d at 293 (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994)); *see also Sibanda v. I.N.S.*, 282 F.3d 1330, 1334 (10th Cir. 2002) (citing *Landgraf*, 511 U.S. at 280)). Congress made clear its intent to apply the current, expanded definition of aggravated felony "regardless of whether the conviction was entered before, on, or after September 30, 1996." 8 U.S.C. § 1101(a)(43). Thus, it is unnecessary to apply the judicial default rules of statutory construction. *See Landgraf*, 511 U.S. at 580 (If "Congress has expressly prescribed the statute's proper reach . . . there is no need to resort to judicial default rules.").

In *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court determined that Congress had not clearly indicated an intention that IIRIRA's repeal of § 212(c) apply retroactively. The Supreme Court's reasoning included its observation that, by comparison, Congress had

"indicate[d] unambiguously its intention to apply specific provisions [of the IIRIRA] retroactively." *St. Cyr*, 533 U.S. at 318-19. The Supreme Court continued with an example, which is directly applicable here: "IIRIRA's amendment of the definition of 'aggravated felony,' for example, clearly states that it applies with respect to 'conviction[s] . . . entered before, on, or after' the statute's enactment date." *Id.* (quoting § 321(b) of IIRIRA). In light of the Supreme Court's express pronouncement of Congress's "unambiguous[ ] intention to apply [the definition of 'aggravated felony'] retroactively" *id.*, as well as the statute's plain language reflecting such intent, this Court must conclude that the definition of aggravated felony is to be applied retroactively. *See also Chan*, 464 F.3d at 293; *Cf. Falaniko v. Mukasey*, 272 F. App'x 742, 749 (10th Cir. 2008) (noting "the Supreme Court's recognition in *St. Cyr* that the amended definition of 'aggravated felony' clearly applied retroactively.").

Because plaintiff's 1994 conviction for attempted rape is an aggravated felony, USCIS properly determined that the conviction prohibited a finding of good moral character for purposes of determining plaintiff's application for naturalization.

> C. *The 1994 Sexual Battery Conviction is a Crime of Violence and an Aggravated Felony, Preventing a Finding of Good Moral Character*

Even were the Court to ignore the abundance of legal authority establishing that the definition of aggravated felony applies retroactively to the attempted rape conviction, the Court notes an alternate reason barring a finding of good moral character under § 1108(f). USCIS determined that the 1994 sexual battery conviction was an aggravated felony, as it was a crime of violence. (*See* A.R. 62). The Court finds that the 1994 conviction for sexual battery is a "crime of violence" under § 1101(a)(43)(F). The definition of "aggravated felony" under § 1101(a)(43) was broadened to include "any crime of violence (as defined under [18 U.S.C. § 16], not including a purely political offense) for which the term of imprisonment . . . is at least 5 years" *in*

10

*the 1990 Immigration Act*, effective Nov. 29, 1990, years *before* plaintiff's conviction for sexual battery. *See* Pub. L. 101-649, § 501(a)(3), 104 Stat. 4978 (1990).[6] Thus, even assuming the 1994 conviction for attempted rape presented some problem with retroactivity (which it does not), the sexual battery conviction, which is a conviction for a crime of violence as defined under 18 U.S.C. § 16, was an aggravated felony at the time of that conviction.

The definition of "crime of violence" in 18 U.S.C. § 16 is:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

"To determine whether a statute describes a crime of violence, we ordinarily look only to the elements of the state-law offense." *Damaso-Mendoza v. Holder*, 653 F.3d 1245, 1248 (10th Cir. 2011) (citing *Efagene v. Holder*, 642 F.3d 918, 921 (10th Cir. 2011)). The application of this "categorical approach" requires courts to "omit consideration of the particular facts of the case" and to "consider the offense generically . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *United States v. Rooks*, 556 F.3d 1145, 1147 (10th Cir. 2009) (construing "crime of violence" under U.S.S.G. § 4B1.2) (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)).

In this case, plaintiff was convicted of sexual battery in violation of Okla. Stat. tit. 21, § 1123(B). (A.R. 139, 144, 474). At the time of his conviction, that statute prohibited sexual battery, which was defined as "the intentional touching, mauling or feeling of the body or private

---

[6] In 1996, the term of imprisonment to qualify for an aggravated felony was amended from five years to one year. Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996).

parts of any person sixteen (16) years of age or older, in a lewd and lascivious manner and without the consent of the person." Okla. Stat. tit. 21, § 1123(B) (West 1992).

The Tenth Circuit has held that a sexual battery under the Oklahoma sexual battery statute involves a "serious possibility . . . of risk of physical injury," making it a "crime of violence" under the Federal Sentencing Guidelines. *United States v. Rowland*, 357 F.3d 1193, 1195-98 (10th Cir. 2004). In arriving at that conclusion, the court noted that, "[b]ecause the statute at issue here presupposes a lack of consent, it necessarily carries with it a risk of physical force," and "[t]he serious risk of bodily injury is a constant in cases involving sexual battery." *Id.* at 1197-98. The Fifth Circuit has cited *Rowland* and held that "the risk that physical force will be used to complete the offense of sexual battery is substantial" such that a sexual battery under Okla. Stat. tit. 21, § 1123(B) is a "crime of violence" within the meaning of 18 U.S.C. § 16(b) and an "aggravated felony." *Zaidi v. Ashcroft*, 374 F.3d 357, 359-61 (5th Cir. 2004).

In accordance with *Rowland* and *Zaidi*, the Court finds and concludes that plaintiff's 1994 conviction for sexual battery was a conviction for an offense involving a "substantial risk [of] physical force against [a] person," rendering it a "crime of violence" under 18 U.S.C. § 16(b). Thus, the conviction was an "aggravated felony" under § 1101(a)(43), which bars a finding of good moral character for purposes of the naturalization application. *See* § 1101(f)(8).[7]

    D.    *Plaintiff's Convictions are Not Too Remote in Time*

Plaintiff also argues that his 1994 convictions are "too remote in time" to be considered to bar a finding of good moral character, because the convictions were entered more than five years prior to the filing of his application for naturalization. (Doc. 35 at 17). For this argument,

---

[7] Because the Court finds the 1994 attempted rape and sexual battery convictions are aggravated felonies, which bar a finding of good moral character, the Court need not make any determination with respect to the plaintiff's earlier 1984 conviction for indecent exposure.

he relies upon 8 U.S.C. § 1427(a). (*Id.*). That provision states in relevant part that, to qualify for naturalization, an applicant, "during all the periods referred to in this subsection, [must have] been and still [be] a person of good moral character. . . ." *Id.*, § 1427(a)(3). That subsection refers to periods of up to five years immediately preceding the filing of the naturalization application. *See id.*, § 1427(a)(1).

Plaintiff asserts that this statutory reference to five years requires that he only establish that he has been of good moral character since five years before he filed the application. The Court disagrees, based upon the express language of the applicable statutes, the clear intent expressed by Congress, and applicable case law. "In determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in [§ 1427(a)], the Attorney General shall *not* be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period." 8 U.S.C. § 1427(e) (emphasis added).

Moreover, the statutory good moral character bar provides that an alien shall not be regarded as a person of good moral character if, during the five year period, he is or was "one who *at any time* has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section)." 8 U.S.C. § 1101(f)(8) (emphasis added). Applying this definition, the Second Circuit has squarely rejected the five year argument made by plaintiff here. In *Chan*, the Second Circuit noted that "'during the period for which good moral character is required,' – i.e. 'the five years immediately preceding the date of filing his application,' § 1427(a) – Chan remained 'one who at any time has been convicted of an aggravated felony.' . . . Although Chan committed his aggravated felony more than five years in the past, he remains one who has committed an

13

aggravated felony, and therefore, he may not receive naturalization." *Chan*, 464 F.3d at 294. This Court agrees with the Second Circuit's analysis, as it is consistent with a plain reading of the applicable statutes, which bar a finding of good moral character if the applicant "*at any time has been convicted of an aggravated felony*." *See* 8 U.S.C. § 1101(f)(8) (emphasis added).

> E.  *Grant of Relief from Removal in 2004 Does Not Bar USCIS from Applying the Good Moral Character Bar to Plaintiff's Naturalization Application*

Finally, plaintiff argues that the doctrine of res judicata barred the USCIS from denying his naturalization application, in light of the immigration judge's 2004 grant of relief from removal under former § 212(c) of the Immigration and Nationality Act. (Doc. 35 at 12). That provision permitted the Attorney General the discretion to grant relief from deportation / removal to any permanent resident alien who had maintained an un-relinquished domicile in the United States for at least seven consecutive years, so long as the resident alien had not been convicted and served at least 5 years imprisonment for one or more aggravated felonies. 8 U.S.C. § 1182(c) (1994) (repealed 1996).

The Court is not persuaded by plaintiff's res judicata argument. While plaintiff repeatedly asserts that the immigration judge adjudicated that plaintiff has good moral character, the record cited by plaintiff simply reflects a pre-printed *form*, with a marked box indicating that § 212(c) relief was "granted." (A.R. 109). That form does not mention or allude to good moral character. *See id.* Plaintiff's own submission to the USCIS in support of his request for § 212(c) relief identified three requirements for such relief, none of which included or required any finding of good moral character. (*See* A.R. 474).

Furthermore, while "evidence attesting to a respondent's good character (e.g. affidavits from family, friends, and responsible community representatives)" is one of many factors which may guide the Attorney General's discretion in granting a § 212(c) waiver, that provision does

not require any finding of "good moral character." *See In re Marin*, 16 I. & N. Dec. 581, 584-85 (B.I.A. 1978) (defining factors considered in reviewing requests for waiver under § 212(c)). The immigration judge was required, "[u]pon review of the record as a whole . . . to balance the positive and adverse matters to determine whether discretion should be favorably exercised." *Id.* Character is one of numerous positive matters to be considered. *See id.*

Thus, even though the immigration judge considered letters or affidavits or other evidence relating generally to plaintiff's "good character" as one factor in the determination, a finding of "good moral character" is not a requirement to obtain a § 212(c) waiver, and § 212(c) does *not* apply or require "good moral character." Rather, "good moral character" is defined in § 1101(f), and there is an absolute bar to a finding of "good moral character," for purposes of naturalization, where, as here, the applicant has been convicted of an aggravated felony. *See* § 1101(f)(8); *see also Ljutica v. Holder*, 588 F.3d 119, 127-28 (2d Cir. 2009) (prior § 212(c) waiver of deportation does not preclude USCIS from denying naturalization based upon a lack of good moral character); *Chan*, 464 F.3d at 295 ("a finding of 'good moral character' was not a statutory prerequisite or necessarily a consideration for relief under § 212(c)").

Moreover, the applicable law expressly provides that "[n]o finding by the Attorney General that the applicant [for naturalization] is not deportable shall be accepted as conclusive evidence of good moral character." 8 U.S.C. § 1427(d). It is clear that Congress intended that no waiver of deportation granted by the Attorney General shall be considered conclusive evidence of good moral character. *See id.*

In *In re Balderas*, 20 I. & N. Dec. 389, 391 (B.I.A. 1991), the BIA held that discretionary relief under § 212(c) does not waive the underlying basis of deportability and, therefore, "the crimes alleged to be grounds for excludability or deportability do not disappear from the alien's

record for immigration purposes." The Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits have cited the reasoning of *Balderas* and determined that a § 212(c) waiver does not preclude subsequent reliance upon convictions to bar other forms of immigration relief or benefits. *See Chan*, 464 F.3d at 295 (prior § 212(c) relief does not preclude reliance upon an aggravated felony to bar finding of good moral character for purposes of naturalization application); *Rodriguez-Munoz v. Gonzalez*, 419 F.3d 245, 248 (3d Cir. 2005) (grant of § 212(c) relief waives only the finding of deportability rather than the basis of the deportability, and the crimes that supported deportability do not disappear from the alien's record for immigration purposes; alien's 1992 conviction remained an aggravated felony for other purposes); *Fajardo-Bania v. Gonzales*, 217 F. App'x 238 (4th Cir. 2007) (even if plaintiff received a § 212(c) waiver, plaintiff would remain deportable under *Balderas* because such waiver "does not eliminate or pardon convictions") (quoting *Balderas*); *Molenda v. I.N.S.*, 998 F.2d 291, 294-95 (5th Cir. 1993) (prior § 212(c) relief on a conviction did not result in forgiveness of that conviction for purposes of it being combined with other events to establish new basis for deportation); *Bakarian v. Mukasey*, 541 F.3d 775, 784 (7th Cir. 2008) (finding that, even if an earlier conviction had been subject to a § 212(c) waiver, it could still be used as a basis for later removability); *Munoz-Yepez v. Gonzales*, 465 F.3d 347, 350 (8th Cir. 2006) (rejecting argument that § 212(c) relief would waive the conviction and immigration consequences for other immigration purposes); *Becker v. Gonzales*, 473 F.3d 1000, 1003-04 (9th Cir. 2007) (even if a § 212(c) waiver were available for a 1978 conviction, the conviction would remain an aggravated felony for subsequent purposes); *Kalil v. United States Att'y Gen.*, 198 F. App'x 910, 913 (11th Cir. 2006) (determining that a waiver of removability under § 212(c) for a 1995 conviction

16

would not alter the character of the prior conviction as being an aggravated felony for other immigration purposes).[8]

The Court agrees with the reasoning of the Circuits to have considered the issue and rejects plaintiff's argument that USCIS is precluded from applying the good moral character bar to plaintiff's aggravated felony convictions for rape and sexual battery.

## IV. Conclusion

Upon de novo review of the Administrative Record, consideration of the summary judgment submissions by the parties, and analysis of the applicable law, the Court finds and concludes that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Because plaintiff has been convicted of at least one "aggravated felony" as defined in § 1101(a)(43), he is barred under § 1101(f)(8) from being regarded as "a person of good moral character" and, accordingly, he cannot satisfy his burden to qualify for naturalization under § 1427(a).

IT IS THEREFORE ORDERED that the defendants' Motion for Summary Judgment (Doc. 29) is hereby **granted**. A separate Judgment is entered herewith.

SO ORDERED this 25th day of July, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[8] In a recent unpublished decision, the Tenth Circuit also cited the reasoning in *Balderas*, in determining that a grant of waiver of grounds of inadmissibility of convictions for adjustment-of-status purposes does *not* erase or waive the underlying convictions for other immigration purposes. *See Kleynburg v. Holder*, 2013 WL 2233925 at \*\*2-3 (10th Cir. May 22, 2013).